FLORA WARNER *v.* DEVER C. WARNER ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued May 3d—decided October 14th, 1938.

*Hugh M. Alcorn* and *Howard W. Alcorn,* with whom, on the brief, were *Harold E. Mitchell* and *Henry P. Bakewell,* for the appellant (plaintiff).

*William H. Comley,* with whom, on the brief, was *William Reeves,* for the appellees (named defendant et als.).

*Jonathan Grout,* for the appellee (defendant The Bridgeport-City Trust Company, executor and trustee).

HINMAN, J. The plaintiff is the widow of DeVer H. Warner, late of Fairfield, they having been married November 23d, 1931, and the defendants DeVer H. Warner, Bradford G. Warner and Margaret W. Field are his children by a former marriage. Prior to their marriage Mr. Warner and the plaintiff had entered into an antenuptial agreement by which, if they should marry, each relinquished any claim to any statutory share in the estate of the other, but providing that either might devise or bequeath to the other by will any portion of his or her estate. Mr. Warner died September 23d, 1934. On October 3d, 1934, his last will, executed May 15th, 1934, was presented for probate. It bequeathed to the plaintiff all of his personal effects, $25,000 in cash payable as soon as possible after the qualification of the executor, devised to her the Burr Homestead in which they had resided, and directed that there be set up a trust fund of $550,000 from which she should receive the income

during her life or so long as she remained unmarried, with a further provision that if the income should be less than $20,000 annually the trustee should make up the deficiency out of principal. The remainder was bequeathed and devised to the testator's three children, above mentioned, in equal shares, including all the testator's rights and interest in a trust fund provided for in the will of his father, I. DeVer Warner, for Eva Follette Warner, and in his father's estate. The defendant, The Bridgeport-City Trust Company, was named as executor.

Thereafter and before hearing on the admission of the will to probate, as a result of conferences between the plaintiff, the Warner children and attorneys acting in their behalf, respectively, an agreement was entered into between them, dated November 13th, 1934, which contained the following provisions: that the Warner children "waive and release any grounds of objection which they have or might have" to the probate of the will and consent that it be admitted to probate; that upon the probate of the will the executor may at once pay to Mrs. Warner the $25,000 bequeathed her by the will, and $5000 to her attorney as counsel fees, may allow and pay her claim upon two notes given to her by her husband, one for $50,000 and one for $25,000, with interest, and may release and discharge her from all claims against her by reason of any payments appearing as having been made by her husband to or for her or on her account; that the executor may pay to her income up to the amount of $13,000 per annum pending the setting up of the trust created by the will for her benefit and thereafter the trustee may pay to her income from the principal of the trust, and make up any deficiency from principal so as to secure to her the full payment of $13,000 per annum; that she execute and deliver a quitclaim deed

to the Warner children of an undivided one-half interest in the Burr Homestead property with a reservation to herself of the right to occupy it, an agreement to save the estate harmless from any claim pertaining to certain mortgages on real estate owned by her, and an instrument assigning to the Warner children all income in excess of $13,000 from the estate directed by the will to be paid to her pending the setting up of the trust for her benefit and thereafter arising from the trust. These instruments were executed by her, and the will was admitted to probate without opposition.

The plaintiff alleged in the first count of her complaint that her execution of the agreement and other papers was induced by representations of the attorneys for the children that the total estate of the decedent would be insufficient to yield the annual income of $20,000 provided for her by the will, that the amount of the trust fund provided for her would exceed the total assets of the estate, leaving nothing available for the children during the continuance of the trust, that they were in immediate need of money, and that they would contest the admission of the will to probate on the ground of undue influence. The first count alleged, further, that the representations were untrue and that her agreements were procured by misrepresentations and duress and thereby the Warner children were unjustly enriched at the expense of the plaintiff. The second count alleged that the plaintiff executed all of the instruments under mistake and that she received no consideration therefor. The prayers for relief were that the instruments be declared void and cancelled, and that a reconveyance to the plaintiff of the real estate be directed. As it is regarding the last mentioned issue, lack of consideration, that the record develops what we are constrained to find re-

versible error, we confine any extended discussion thereto.

In the course of the trial the plaintiff proffered evidence, which the court excluded, the declared purpose of which was as tending to prove that there was no ground for a reasonable belief by the defendants that the provisions for her in the will were obtained by undue influence. She also made "claims of law," which were inferentially overruled, that there was no reasonable belief on the part of the Warner children or their attorneys that the plaintiff had exercised undue influence upon the testator, and that there was no bona fide intention on their part to contest the will upon that or any other ground. Error is assigned as to these rulings, also as to the conclusion that "there was ample consideration to support the settlement made by the plaintiff." The plaintiff also requested a finding that there was no reasonable basis for a claim that Mr. Warner had been unduly influenced by the plaintiff, but beyond the declared intention to contest the will on that ground there are no facts found which appear to be addressed to the existence of grounds for such opposition or otherwise to the good faith of that intention. Indeed, the finding includes a statement that at the time the will and other wills which preceded it were executed the attorney (Mr. Day) who drew them and who also was, with Mr. Marsh, acting for the children in the present matter, "had no reason to believe and did not believe that any of said wills were procured by undue influence." There is no finding, direct or indirect, that a contest was intended in good faith and on reasonable grounds. It is evident, therefore, that the rule adopted by the trial court was that forbearance of the right to contest a will which the forbearing party has the legal right to contest is sufficient to constitute consideration for such an agreement as

is here involved, irrespective not only of whether or not he could succeed but also of whether or not there were reasonable grounds for such a contest or whether or not he had reason to so believe in good faith. In other words, as is one of the defendants' contentions, that forbearance to contest was the abandonment of a legal right and a sufficient consideration for the agreement. *Sheppey* v. *Stevens,* 185 Fed. 147, 150; *Seaman* v. *Seaman,* 12 Wend. (N. Y.) 381, 382; *LaRocque* v. *Keigher,* 219 Ill. App. 74, 76; *Fairfax State Savings Bank* v. *Coligan,* 211 Iowa 670, 676, 234 N. W. 537; note, 25 L. R. A. (N. S.) 302; 12 C. J., p. 327.

However, the rule supported by the great weight of authority and in our opinion the better one is that in order to furnish a consideration for a compromise agreement the contest must be instituted or intended in good faith and based upon reasonable grounds for inducing a belief that it is sustainable. "With no basis in fact for a contest, and no reasonable ground for believing that a contest might rightfully be instituted and maintained, the agreement to refrain from doing so furnishes . . . no sufficient consideration for the promise. . . ." *Montgomery* v. *Grenier,* 117 Minn. 416, 420, 136 N. W. 9; *Hardin* v. *Hardin,* 201 Ky. 310, 312, 256 S. W. 417; 12 Am. Jur., Contracts, §§ 85, 86, 87. The settlement by compromise of will contests and family disputes, being calculated to avert contentions, adjust doubtful rights, contribute to peace and harmony, protect the honor of the family, and avoid litigation, is not in contravention of public policy, and, when fairly arrived at, is favored both in law and in equity. *Cummings* v. *Weaver,* 114 Conn. 325, 331, 158 Atl. 812; *Nichols* v. *Nichols,* 79 Conn. 644, 655, 66 Atl. 161; *Hurlbut* v. *Phelps,* 30 Conn. 42, 50; *Leach* v. *Fobes,* 77 Mass. (11 Gray) 506, 509; *Barrett* v. *Carden,* 65 Vt. 431, 435, 26 Atl. 530; *LaRocque* v. *Keigher,*

supra, 76, Note, 38 A. L. R. 742; 11 Am. Jur., p. 253; 12 C. J., p. 362. "It is well settled that in equity the termination of family controversies affords a consideration which is sufficient to support a contract made for such purposes. . . . In order to render valid the compromise agreement, it is not essential that the matter should be really in doubt; but it is sufficient if the parties consider it so far doubtful as to make it the subject of compromise. . . . But it is necessary, in order to furnish consideration for such compromise agreement, that the contention be made in good faith and be honestly believed in." *Preston* v. *Ham*, 156 Ga. 223, 234, 119 S. E. 658, 662. The fact that family settlements are favorites of the law does not dispense with the necessity for some consideration to render them valid. *Hardin* v. *Hardin*, supra, 311.

Forbearance to pursue contest of a will in good faith begun or intended is a sufficient consideration for an agreement adjusting such a controversy, although forbearance of a claim known to be frivolous, or without foundation, would not be a good consideration for the reason that the pursuit of such a claim would be wanting in good faith. The intention "must be sincere to carry on a litigation which is believed to be well grounded and not false, frivolous, vexatious or unlawful in its nature. . . . The giving up of litigation which is not founded in good faith and which does violence to an enlightened sense of justice in view of the knowledge of the one making the concession, is not the relinquishment of a thing of value, and does not constitute a sufficient consideration for a contract." *Silver* v. *Graves*, 210 Mass. 26, 30, 95 N. E. 948; *Mackin* v. *Dwyer*, 205 Mass. 472, 475, 91 N. E. 893; 1 Williston, Contracts (Revised Ed.) p. 476; Restatement, Contracts, § 76 (b); 12 Am. Jur., p. 582. In *Bellows* v. *Swoles*, 55 Vt. 391, which was an action to

recover on a promise to pay money induced by forbearance by the plaintiff to contest a will, it is said (p. 398): "Whether the plaintiff, acting as a reasonable, prudent and conscientious man, had good ground to believe undue influence had been used, and for that cause he had good reason to doubt the validity of the will, and therefore honestly proposed to oppose its establishment, or whether he had no good ground to believe undue influence had been used, and so had no good reason to doubt the validity of the will, and dishonestly put the same forth as a ground of opposition to the establishment of the will, makes a very material difference in regard to the consideration his action [in forbearing to contest] would afford. . . . On the first supposition his forbearance would be the yielding of a right which he honestly upon reasonable grounds supposed existed and intended to assert, and would furnish ample consideration. . . . On the latter hypothesis, his opposition to the will was dishonest, unfounded, factitious, and set up to extort money from the defendant."

The further contention on behalf of the defendants that as there is no allegation in the complaint that the defendants did not intend in good faith to contest the will, no evidence tending to prove lack of good faith was admissible, is untenable; lack of good faith was implicit in the allegation of lack of consideration. Also without merit is the further claim that "the only relevant evidence to prove that the defendants did not in good faith intend to contest the will would be proof of conduct or declarations on their part inconsistent with such intention," although this might be applicable if the only question was whether or not the defendants actually intended a contest, to the exclusion of inquiry as to the existence of grounds for a reasonable belief that the opposition is sustainable.

It is not necessary, however, that in order to constitute consideration it appear that there was in fact a good cause of action. It is sufficient if the forbearing party has any reasonable and bona fide ground for opposing the establishment of the will and forbears to exercise it because of the agreement. It is not necessary that the ground of opposition be found to have been sufficient to have defeated the establishment of the will. "It was enough if he had an honest, reasonable ground of opposition and intended to use it." *Bellows* v. *Swoles,* supra, 398. See cases in Notes, 38 A. L. R. 740 et seq.; 25 L. R. A. (N. S.) 305. Whether the forbearing party would have succeeded in the litigation is not the test. "The court will not ask 'which party would have succeeded,' for that would involve the trial of the issue that was compromised, and the object of the law in encouraging compromises would thus be defeated." *St. Mark's Church* v. *Teed,* 120 N. Y. 583, 588, 24 N. E. 1014. In every controversy one of the parties must be right and the other wrong and if the court, in an action relating to a compromise agreement, were to go behind the compromise, reopen the controversy which preceded it and determine which was in fact right "their settlement would be . . . a mere idle ceremony." *Nixon-Foster Service Co.* v. *Morrow,* 41 N. M. 67, 72, 64 Pac. (2d) 92, 94. The question is not if there was in fact undue influence but whether the defendants could in good faith reasonably so believe. *Van de Stouwe* v. *Bankers Life Co.,* 218 Iowa 1182, 1188, 1190, 254 N. W. 790; *Preston* v. *Ham,* supra, 234, 119 S. E. 658. "The policy of the law is rather to discourage, than to encourage, a resort to litigation. If a controversy be actual and in good faith, it is a proper subject-matter of a binding contract or settlement." *Thomas' Appeal,* 85 Conn. 50, 54, 81 Atl. 972. The incentive to bona fide com-

promises, settlements and amicable arrangements is usually uncertainties of law or fact or both; the very object of such agreements—to avoid the necessity of resolving such uncertainties—would be defeated if to determine them were made essential to the validity of the agreement. *Smith* v. *Richards,* 29 Conn. 232, 239. The position of one who has not entered upon contest of a will but contemplates and intends it pre-supposes further examination and investigation, and does not import finality as to the sufficiency of the grounds of opposition, and forbearance to contest in effect includes discontinuance of investigation. *Grochowski* v. *Grochowski,* 77 Neb. 506, 109 N. W. 742, 13 L. R. A. (N. S.) 484, 489. It is enough if the intention to contest is entertained in good faith and upon reasonable grounds for belief that it is sustainable. *Montgomery* v. *Grenier,* supra, 419; *Fairfax State Savings Bank* v. *Coligan,* 211 Iowa 670, 676, 234 N. W. 537; 12 Am. Jur., p. 582.

Many of the proffers of evidence, exclusion of which is assigned as error, were quite obviously adapted and directed to a general issue as to whether there was or was not undue influence rather than to negative the existence of any grounds for reasonable belief and reliance thereon on the part of the defendants. A distinct impression is given thereby and by intimations conveyed by counsel as to the nature and extent of further evidence proposed to be offered if permitted, that the purpose was to embark upon such an inquiry as would be appropriate to a contest against the will on the ground of undue influence, and the perusal of the entire record of the trial which we have been required to make by the attacks upon the finding tends to confirm that impression. The plaintiff in her brief claims to be entitled to the same wide latitude in the introduction of evidence as is permitted in such a

contest. *Bishop* v. *Copp*, 96 Conn. 571, 575, 114 Atl. 682. As appears from what has been said, an inquiry of such breadth would be inappropriate and inadmissible. The plaintiff's burden of proof on the issue of lack of consideration was to establish that the proposed contest was not bona fide and therefore was not one the relinquishment of which would afford consideration for the agreement (*Van de Stouwe* v. *Bankers Life Co.*, 218 Iowa 1182, 1188, 254 N. W. 790) by negativing the existence of any grounds for reasonable belief in the existence of undue influence and reliance thereon on the part of the defendants.

Some items of evidence which were excluded, however, appear to have been relevant and material to this more restricted issue. The following rulings are mentioned merely as illustrative. The finding includes that during the negotiations which led up to the agreement Mr. Day, at the request of the attorneys representing the plaintiff, disclosed to them in a general way the reasons for the belief of the defendants that Mr. Warner had been unduly influenced by the plaintiff in making his last will. These included the decedent's expression of purpose to leave the bulk of his estate to his children, the gifts which he made to the plaintiff and the several wills and codicils which he had made and their provisions for her. The finding also discloses that commencing with a will dated September 2d, 1931, before his marriage to the plaintiff, Mr. Warner had made numerous wills containing varying provisions for the plaintiff; they were offered by the plaintiff and admitted in evidence for all purposes other than as tending "to show that there was no reasonable foundation for any claim of undue influence" but were excluded for that purpose, to which they were also relevant and material if, as we hold, the existence of such reasonable foundation was in

issue. The like is true as to the exclusion, as to that purpose, of correspondence between the testator and Mr. Day preparatory to the making of the final will. Mr. Day in his testimony mentioned certain persons whose names had been given him by the Warner children as potential witnesses on the subject of undue influence and stated that he had talked with two of them—the captain and steward on Mr. Warner's yacht —but their conversation with him was excluded although it would seem that the information given by them would be material and relevant to the question of good faith. A few other rulings in this class might also be held erroneous but are of minor materiality. In fact, it is doubtful if all of the evidence which was proffered specifically for the purpose of showing that there was no reasonable basis for a belief that the plaintiff exercised undue influence upon Mr. Warner would be sufficient to establish that contention. However, the fundamental error as to the essentials of consideration for the agreement and the absence, as already indicated, of findings as to the existence of reasonable grounds and good faith of the defendants, leaving without necessary support the conclusion that there was consideration, are defects which we find insurmountable and require us to order a new trial.

Another group of rulings on evidence assigned as error relate to the exclusion, as hearsay, of answers to questions addressed to the plaintiff as a witness and to Mr. Swan and Mr. Lee, her attorneys, seeking to elicit conversations between them as to matters other than reports to her by them of the interviews which they had with the defendants and Messrs. Marsh and Day, which the finding indicates and the record of the trial substantiates were admitted and given without objection. The testimony sought, with the exceptions hereafter mentioned, was within the general grounds

of exclusion as hearsay—the absence of sanction of an oath and lack of the test of cross-examination; it was not within the exception applying to statements made under conditions deemed to render them " 'equivalent in reliability and trustworthiness to the standard of ordinary testimony when subjected to cross-examination' " (*Shea* v. *Hyde,* 107 Conn. 287, 289, 140 Atl. 486) or to characterize or explain conduct (*Engel* v. *Conti,* 78 Conn. 351, 62 Atl. 210). The plaintiff's case offered no occasion for the exception applicable when the question of whether a party has acted prudently, in good faith or without malice, of which actions for malicious prosecution are typical examples. *Friend* v. *Hamill,* 34 Md. 298, 308; 3 Wigmore, Evidence (2d Ed.) § 1789; 10 R. C. L., p. 959. The evidence involved appears to have been comparable to that held objectionable as hearsay in *Corsello* v. *Emerson Brothers, Inc.,* 106 Conn. 127, 134, 137 Atl. 390; *Raymond* v. *Parker,* 84 Conn. 694, 699, 81 Atl. 1030, and, particularly, *Bushnell* v. *Bushnell,* 103 Conn. 583, 595, 131 Atl. 432, and to that in *Loeb* v. *Webster,* 213 Ala. 99, 102, 104 So. 25. The plaintiff alleged in her complaint that she entered into the agreements upon the advice of her attorney, Mr. Swan who, as well as the plaintiff, relied upon the representations made on behalf of the defendants, and the defendants in their answer to the second count alleged that the plaintiff entered into the agreement "acting upon the advice of her attorney." The issue raised by these allegations technically entitled the plaintiff to show what that advice was for the purpose of proving either that she followed it as she alleged, but that it was based upon misrepresentations made to her attorneys by the defendants, or, as is also one of her claims in the trial, that such advice was against making the agreement but that she entered into it, notwithstanding, to avoid

disclosures of discreditable facts in her husband's history which it had been suggested by the defendants' attorneys to her counsel would be involved in a contest of the will. Also, inquiry on cross-examination of Mr. Marsh as to what those facts were appears to have been admissible.

The assignments seeking corrections of the finding are so numerous that the plaintiff's counsel concede that they constitute such "a wholesale attack" as ordinarily to be open to criticism. *Pennsylvania-Dixie Cement Corp.* v. *Lines Co.*, 119 Conn. 603, 608, 178 Atl. 659. We have been at pains to accord them due investigation, but as a new trial must be ordered because of error pertaining to the issue of consideration, no discussion of the finding as to the other issues would be profitable.

There is error and a new trial is ordered.

In this opinion the other judges concurred.