STATE OF CONNECTICUT *v.* DAVID C. WRIGHT
(AC 27407)

Flynn, C. J., and Beach and McDonald, Js.

Argued January 17—officially released April 15, 2008

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *C. Robert Satti, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, David C. Wright, appeals from the judgment of conviction, following a jury trial, of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. On appeal, the defendant claims that the trial court improperly permitted the state to introduce into evidence a transcript of the prior testimony of a witness pursuant to § 8-6 (1) of the Connecticut Code of Evidence[1] without sufficient proof of due diligence in the state's attempt to locate the allegedly unavailable witness. We affirm the judgment of the trial court.

As a consequence of events that occurred in Bridgeport on the evening of October 15, 2000, resulting in the shooting death of one man and the wounding of another man, the defendant was charged with murder, assault in the first degree, carrying a pistol or revolver without a permit and possession of a weapon in a motor vehicle. After a jury trial, the defendant was acquitted of the murder and assault charges, but he was convicted of carrying a pistol or revolver without a permit and possession of a weapon in a motor vehicle. The defendant appealed from the judgment of conviction, which

---

[1] Connecticut Code of Evidence § 8-6 provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. . . ."

was reversed, and his case was remanded for a new trial. See *State* v. *Wright*, 86 Conn. App. 86, 860 A.2d 278 (2004). Following his new trial, the defendant was convicted of carrying a pistol or revolver without a permit and possession of a weapon in a motor vehicle. This appeal followed.

The defendant claims that the court improperly permitted the state to introduce into evidence a transcript of the prior in-court testimony of a witness without sufficient proof of due diligence in the state's attempt to locate the allegedly unavailable witness.[2] The defendant does not challenge the reliability of the witness' testimony, and he specifically stated during oral argument before this court that he is not raising a *Crawford* confrontation clause issue. See *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The defendant's appellate brief also contains no reference to *Crawford*.[3] The defendant further acknowledges that he had a full opportunity to cross-examine this witness

---

[2] "To satisfy the requirements for the former testimony exception to the hearsay rule, a movant must satisfy a two part test. The witness must be unavailable, and the former testimony must be determined to be reliable. *State* v. *Lapointe*, 237 Conn. 694, 737, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996). The reliability prong of the test requires that the issues testified about in the prior proceeding must be the same or substantially the same as the issues testified about in the present proceedings. *State* v. *Parker*, 161 Conn. 500, 503–504, 289 A.2d 894 (1971). Also, the party seeking the admission of the prior statement must demonstrate that the adverse party had the opportunity to conduct a full and complete examination of the declarant in regard to the statement." *State* v. *Rodriguez*, 68 Conn. App. 303, 311, 791 A.2d 621, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

[3] At various times throughout his main appellate and reply briefs, however, the defendant claims that his right to confrontation was violated by the admission of this testimony. During oral argument before this court, the defendant's appellate counsel firmly stated that he was not making a *Crawford* argument and that the sixth amendment right to confrontation had been satisfied by the earlier cross-examination of the witness. Counsel then explained to this court that the only issue relevant to this appeal was whether due diligence had been exercised in attempting to locate this witness.

at his first trial. The crux of the defendant's claim is that the court declared this witness unavailable without a sufficient showing of due diligence on the part of the state in attempting to procure him. He argues that the state made little effort to procure the witness for this trial in that it did not attempt to get a subpoena, did not ask the police to assist in locating him, assigned only one inspector to the case and waited until the start of trial to begin looking for the witness. Thus, he argues, the state did not satisfy the due diligence requirement. We do not agree.

Initially, we must determine the appropriate standard of review. The defendant argues that we should employ a plenary standard of review to this claim because he is challenging the court's legal determination as to what satisfies the requirement of due diligence. Even if all the facts found by the court are accurate, he argues, the legal conclusion of unavailability was not warranted because there was no showing of due diligence. The state asserts that our standard of review is the abuse of discretion standard because this claim is nothing more than an evidentiary issue, and the defendant does not allege a *Crawford* violation. It also argues that the court's factual finding that the state exercised due diligence is subject to the clearly erroneous standard of review.

Recently, our Supreme Court in *State* v. *Saucier*, 283 Conn. 207, 926 A.2d 633 (2007) (en banc), explained that when assessing the trial court's evidentiary rulings, "the appropriate standard of review is best determined, not as a strict bright line rule, but as one driven by the specific nature of the claim. To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, [the] standard of [appellate] review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are

legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. . . . [On the other hand, an appellate court] review[s] the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . Similarly, appellate courts will defer to the trial court's determinations on issues dictated by the exercise of discretion, fact finding, or credibility assessments. A paradigmatic example of this distinction would be a trial court's conclusion that a hearsay statement bears the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule, which would be reviewed for an abuse of discretion. . . . By contrast, the question of whether the trial court properly could have admitted that statement under the residual exception if the admission of that type of statement expressly was barred under another hearsay exception would present a question of law over which the appellate courts exercise plenary review." (Citations omitted.) Id., 218–19. Because the court's assessment of whether the actions of the state in attempting to find the witness properly could be characterized as having been undertaken with due diligence involve a "judgment call" by the court, we conclude that the proper of standard of review in this instance is the abuse of discretion standard.

In *State* v. *Frye*, 182 Conn. 476, 481, 438 A.2d 735 (1980), our Supreme Court recognized five of the most common situations in which a declarant will be deemed unavailable to testify. The situation most relevant to the present case is one in which the declarant is "absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . *by process or other reasonable means*." (Emphasis in original;

internal quotation marks omitted.) Id. "In interpreting reasonable means, [our Supreme Court has] held that the proponent must exercise due diligence and, at a minimum, make a good faith effort to procure the declarant's attendance. . . . The trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 220 Conn. 408, 411–12, 599 A.2d 1060 (1991). "[I]t is within the discretion of the trial court to accept or to reject the proponent's representations regarding the unavailability of a declarant and the trial court's ruling will generally not be disturbed unless the court has abused its discretion." *State* v. *Lopez*, 239 Conn. 56, 79, 681 A.2d 950 (1996).

"[D]ue diligence to procure the attendance of the absent witness [is] . . . an essential . . . predicate of unavailability. . . . To take advantage of the hearsay exceptions requiring unavailability, the proponent must show a good faith, genuine effort to procure the declarant's attendance by process or other reasonable means. . . . This showing necessarily requires substantial diligence. In determining whether the proponent of the declaration has satisfied this burden of making reasonable efforts, the court must consider what steps were taken to secure the presence of the witness and the timing of efforts to procure the declarant's attendance." (Citations omitted; internal quotation marks omitted.) Id., 75. "A proponent's burden is to demonstrate a diligent and reasonable effort, not to do everything conceivable, to secure the witness' presence." Id., 77–78.

Inspector Michael Kerwin from the office of the state's attorney testified as to the efforts that he made

to procure the witness for this trial.[4] Kerwin looked for the witness over a nine day period, including part of the day he testified. He reviewed databases containing drivers' license information and vehicle registration information. He checked with the department of correction to determine whether the witness was incarcerated and with the state police to see if there were any pending cases against the witness. He also checked nationwide to see if there were any pending arrests. Kerwin reported that he checked, through the witness' social security number, to see if the witness was working. Kerwin spoke with prior landlords and went to eight or nine different locations in the Bridgeport area and to one location in New Haven in an attempt to locate the witness. He checked on child support orders and protective orders, of which there were none. Kerwin also attempted to locate the witness' mother and brother through the drivers' license and motor vehicle databases to no avail. Kerwin physically went to all the addresses that came up through these searches, but he still was not successful in locating the witness or his family members.

Kerwin also testified that he discovered that the witness was collecting some type of compensation from the state of Connecticut and that the address where these checks were sent was 24 Sanford Place, apartment B-14, in Bridgeport. When Kerwin went there, however, he was told by the superintendent that the witness and his mother had been evicted from that apartment quite some time ago. The person then residing in apartment B-14 told Kerwin that he did not know the witness. Kerwin had no additional information concerning these checks or how the witness was getting them. After hearing this testimony and allowing counsel

---

[4] The defendant does not challenge the credibility of Kerwin's testimony and stated during oral argument that he found it "to be credible and remarkably candid."

the opportunity to argue the issue of due diligence, the court credited Kerwin's testimony and found the witness to be unavailable, specifically concluding that the state's efforts to locate the witness were "timely and reasonable." The court further concluded that "immediately upon receiving notice that this particular case would be on trial, diligent efforts were made to locate [the witness]." The court admitted the testimony under § 8-6 (1) of the Connecticut Code of Evidence.

Although the defendant argues that the state should have done more to procure the attendance of this witness at trial, "the question of whether an effort to locate a missing witness has been sufficiently diligent to declare that person unavailable is one that is inherently fact specific and always vulnerable to criticism, due to the fact that [o]ne, in hindsight, may always think of other things." (Internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 67, 602 A.2d 571 (1992). A review of the record, including the factual findings of the court, leads us to the conclusion that the state sufficiently satisfied the two part test for the admissibility of the unavailable witness' testimony. The state demonstrated that it made a good faith, reasonable and due diligent effort to locate the witness, and the defendant has not challenged whether the testimony had the requisite indicia of reliability. Accordingly, we conclude that the court did not abuse its discretion in admitting the witness' prior in-court testimony.

The judgment is affirmed.

In this opinion the other judges concurred.